113

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| LARRY ABBOTT, *et al.*, | Case Nos. |
| | 3:08-cv-164-J-20JRK |
| Plaintiffs, | 3:08-cv-149-J-25JRK |
| | 3:08-cv-150-J-25HTS |
| vs. | 3:08-cv-151-J-20MCR |
| | 3:08-cv-152-J-25HTS |
| R.J. REYNOLDS TOBACCO CO., *et al.*, | 3:08-cv-153-J-32TEM |
| | 3:08-cv-154-J-25JRK |
| Defendants. | 3:08-cv-155-J-32MCR |
| | 3:08-cv-156-J-32JRK |
| | 3:08-cv-157-J-32MCR |
| | 3:08-cv-158-J-32MCR |
| | 3:08-cv-159-J-16TEM |
| | 3:08-cv-160-J-20HTS |
| | 3:08-cv-161-J-25MCR |
| | 3:08-cv-162-J-25MCR |
| | 3:08-cv-163-J-32TEM |
| | 3:08-cv-165-J-25TEM |
| _____/ | |

# PLAINTIFFS' MOTION FOR REMAND AND MEMORANDUM

**1 Introduction** ................................................................ **3**
    *1.1 Statement of the case* ........................................................ *3*
    *1.2 Summary of argument* ....................................................... *5*

**2 This case IS a CAFA "Mass Action"** ................................. **6**
    *2.1 The Engle III plaintiffs are textbook CAFA mass action plaintiffs* ....... *6*
    *2.2 All plaintiffs are class members of Engle and are vested with a verdict on liability from Phase I of that trial* .............................. *7*
    *2.3 Engle III trials will have great similarity and should be tried as a mass action* ............................................................... *9*
    *2.4 The Engle III claims meet the MCL criteria for aggregated treatment* .. *11*
    *2.5 Other requirements for mass action are met* ............................ *13*

**3 This case is not YET a mass action** ................................. **13**

**4 Conclusion** ................................................................ **15**

**5 Local Rule 3.01(g) Certification** ....................................... **15**

**6 Certificate of Service** ................................................... **17**

2

# 1 INTRODUCTION

## *1.1 Statement of the case*

Approximately 4000 Engle Phase III cigarette smoking damage claims[1] tried against the tobacco defendants ("Tobacco") were filed in Duval Circuit Court from January 9, 2008 through January 11, 2008, in groups of approximately 200.[2] These claims included approximately 660 claims that had been filed in this United States District Court on or about August 16, 2007 in groups of approximately 20. Defendants removed almost all of these state court filings on February 12-14, 2008 under the Class Action Fairness Act of 2005 (CAFA), 28 USC §§ 1332(d) and 1453.

---

1 Phase III claims are damage claims resulting from the *Engle* statewide class action trial held in Miami-Dade county. Phase I was the liability phase, and resulted in a verdict for plaintiffs on numerous counts of negligence, strict liability, fraudulent concealment, and conspiracy against Tobacco. In Phase II the representatives damage cases, and classwide punitive damages were tried. The Florida Supreme Court held that the liability verdict in Phase I was res judicata for the class members, and the class should be decertified for ("Phase III") class member damage claims. See *Engle v. Liggett Group, Inc*. 945 So.2d 1246, 1270 (Fla 2006).

2 Wrongful death cases were filed separately from living plaintiffs. Within those classifications, the cases were filed alphabetically. The deadline for filing Engle III claims was January 11, 2008. No further claims can be filed, so the universe of claims is defined. There are approximately 7500 claims statewide, including the approximately 4000 claims before this Court. The remainder of the statewide claims are in the state court system in many counties. A small number of claims are believed to be in the Middle District of Florida, Fort Myers division. The number of claims is approximate because some clients hired successive law firms who have each filed claims without knowing of the other's existence. The number of such duplicate claims is small.

On August 7, 2007 the Judicial Panel on Multidistrict Litigation filed Tobacco's motion for transfer of all federal cases to the Middle District of Florida. Plaintiffs in the 660 cases then filed agreed with this motion, and both parties urged the MDL panel to transfer all Engle III actions under §1407. The parties jointly urged the MDL panel to designate the transferee court as the Middle District of Florida and the transferee judge as the Hon. Timothy Corrigan.

On December 12, 2007 the Judicial Panel on Multidistrict Litigation held that sufficient common factual issues have already been decided in Phase I of Engle, that the findings applied to the cases before them, and there was no need for multidistrict consolidation. The Panel suggested the parties proceed under the MANUAL FOR COMPLEX LITIGATION, FOURTH, ("MCL") § 20.14, which enumerates several methods available for judges to coordinate and manage related cases pending in different districts. Order Denying Transfer, *In re: Engle Progeny Tobacco Products Liability Litigation*, MDL No. 1887 (December 12, 2007). We agree that this Court should employ techniques in the MCL to manage mass actions such as this one.

Under CAFA a case may be removed if it is a *mass action* of more than 99 cases, wherein at least one defendant is diverse from the home state, and the total amount in controversy exceeds $5 million. 28 USC §1332(d)(2). This is a motion to remand, or to withhold adjudication on remand, filed identically in all removed tobacco cases.

4

*1.2 Summary of argument*

This particular case consists of approximately 200 class members[3] making damage claims under "Phase III" of the Engle case. We agree with defendants the class members' Phase III damage claims share factual and legal similarities. Thus, the Phase III claims should be tried as a group or a mass action. Jurisdiction would be proper under CAFA if this occurs.

As yet, however, there is no order for a joint or mass action trial, and in similar proceedings Tobacco has stated that it intends to move for severance, challenging the mass action status. See Amended Joint Case Management Report, *Bonner et. al. v. R.J. Reynolds et. al.*, Case No. 3:07-cv-00804-HES-mcr, filed on January 24, 2008. Tobacco has argued that each claim should be tried by its own separately empaneled jury. *Id*. at 1.3.

We thus suspect that Tobacco's CAFA removal is a sham. Tobacco accomplished CAFA removal on the basis of a mass action, but we suspect that Tobacco fully intends to reverse its position and argue for 4000 separate trials, a position that if adopted would

---

[3] The class consists of all Florida residents fitting the class description as of the Third District Court of Appeals decision affirming the the trial court's order certifying the class but reducing it to Florida residents only. *Engle v. Liggett Group, Inc*. 945 So.2d 1246, 1256 (Fla 2006). "All Florida citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine."

disenfranchise the class members entirely and burden this court with repetitive litigation for geologic eons. *Either these claims present a true CAFA mass action, under which pretrial and trial procedures designed for mass actions, for example aggregation of claims for pretrial and trial, streamlining of discovery, simplification of common issues, and other procedures, or they do not. If they do, Federal jurisdiction is proper. If not, they should be remanded.*

Therefore this action should be remanded unless there exists an order (or at least a stipulation by Tobacco) setting a joint trial for a group of over 100 plaintiffs.

## 2 THIS CASE IS A CAFA "MASS ACTION"

### 2.1 The Engle III plaintiffs are textbook CAFA mass action plaintiffs

In truth, the plaintiffs are *exactly* what CAFA contemplated in a "mass action." CAFA defines mass action as: "any civil action...in which monetary relief claims of 100 persons or more are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact..." 28 USC §1331(d)(11)(B)(I). These claims share common questions of law and fact.

We agree that these plaintiffs should be considered a "mass action" and should be tried in groups exceeding the CAFA threshold of 100. All plaintiffs are similarly situated and part of the Engle class. They were all present (by representative plaintiffs in the

Engle proceedings), which rendered on their behalf a comprehensive liability verdict including causation of specific disease and culpability of Tobacco.

## 2.2 All plaintiffs are class members of Engle and are vested with a verdict on liability from Phase I of that trial

All plaintiffs share the Engle I verdict. They therefore take into the Phase III proceedings common determinations that must be read to the jury and otherwise embedded into the trial.[4]  The Florida Supreme Court directed that damage claims be

---

4 The verdict, as discussed by the Florida Supreme Court on appeal, found the following:

> We approve the Phase I findings for the class as to:
>
> > Questions 1 (that smoking cigarettes causes aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, adenocarinoma, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer),
> >
> > 2 (that nicotine in cigarettes is addictive),
> >
> > 3 (that the defendants placed cigarettes on the market that were defective and unreasonably dangerous),
> >
> > 4(a) (that the defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both),
> >
> > 5(a) (that the defendants agreed to conceal or omit information regarding

7

tried subject to the verdict in Phase I. Class members can choose to initiate individual damages actions[5] and the Phase I common core findings we approved above will have res judicata effect in those trials. *Engle v. Liggett Group, Inc*. 945 So.2d 1246, 1270 (Fla 2006).

The plaintiffs were all *parties* to the Phase I verdict, so they share a common legal status.[6]

> the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment),
>
> 6 (that all of the defendants sold or supplied cigarettes that were defective),
>
> 7 (that all of the defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants), and
>
> 8 (that all of the defendants were negligent).

Therefore, these findings in favor of the Engle Class can stand.

---

[5] The phrase "individual damage actions" means non-class actions, where a jury determines the award of each class member, and the award is not determined by *representative* plaintiffs. Nothing in Engle suggests that a single jury is *limited to one class member's determination*, as long as each member receives, on his or her own, a jury determination, and is not bound by the determination of a representative.

6 All plaintiffs were present *by representation* at Phase I of Engle, *as fully as if they were physically present. Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 363 (1921). The class was decertified prospectively for the issues of causation and damages only. The court was very careful not to decertify retrospectively. "We conclude that *continued* class action

### *2.3 Engle III trials will have great similarity and should be tried as a mass action*

Given that the plaintiffs are vested with the Phase I liability verdict, what remains to be tried can be most efficiently accomplished by a single jury evaluating multiple claims, i.e. a mass action. Moreover, there is no viable, practical, or workable alternative to such a procedure.[7]

Engle III claims share identical burdens of proof. The issues remaining to be determined in Engle III include (1) class membership; (2) medical causation of their disease; (3) the amount of damages; (4) comparative negligence if applicable; and (5) punitive damages if applicable.

Class membership consists of three qualifications: a qualifying disease; manifestation or diagnosis before November 21, 1996, and Florida residence. The

---

treatment *for Phase III* of the trial plan is not feasible..." Under Florida law, certification for limited liability issues is permissible. "A trial court can properly separate liability and damages issues, **certifying class treatment of liability** while leaving damages to be determined on an individual basis." *Engle,* 945 So.2d at 1268.

7 Tobacco will argue that each claim must be tried before a separately empaneled jury, and that each claim would take upwards of one month to try. Four thousand months is 333 years, assuming trials are done back to back with no breaks. With breaks, a millennium is our estimate. We do not believe such a catastrophe is required, because CAFA and the MCL both anticipate aggregate, mass actions that can be efficiently tried within the life span of the parties.

qualifying diseases are listed in the Engle opinion are quoted in footnote 4 above. These are the only qualifying diseases. The elements for diagnosis or manifestation of a qualifying disease need only be told to the jury one time. For example, assume the court intends to try a group of 200 plaintiffs. One hundred might have been diagnosed with lung cancer, 30 with cancer of the throat or esophagus, 30 with chronic obstructive pulmonary disease, and so on. It is an obvious and huge time saver to introduce one jury, not 100, to the diagnostic elements of lung cancer, and one jury, not 30 to those of laryngeal cancer. This assumes the claims are grouped, as they presently are filed, randomly by alphabet. If the claims are re-grouped by disease, even more substantial economies can be realized.

Medical causation is a very similar issue that shares great commonality among Engle III claims. Although bound by the Engle I verdict that the qualifying diseases are caused by cigarettes, Tobacco has a right to challenge whether a given claimant's disease is due to cigarette smoke or some other factor (however unlikely this may be, it is their right). For example the defendants would be permitted to show that the plaintiff has a genetic predisposition to the disease, or that the disease was caused by some other activity, etc. In proving causation, the claimants are entitled to show the overwhelming probability that lung cancer is due to cigarette smoking (98% is) and to rely on the Engle I findings. This evidence will be common to all claims.

10

Likewise, comparative negligence, if it is a defense[8], is handled most economically in an aggregate fashion. Tobacco commonly places into evidence newspaper articles and similar things about the supposed "common knowledge" of the hazards of cigarettes, to show that an individual was negligent in using the product (as urged by Tobacco in their marketing). Such common knowledge evidence can economically be placed before one jury, not 200. Other issues in these damage claims can likewise be handled most efficiently in a *mass action*.

### *2.4 The Engle III claims meet the MCL criteria for aggregated treatment*

The MCL provides substantial guidance for the courts' in efficiently handling mass actions. MCL defines "aggregated treatment" as "various devices that bring claims and cases together for pretrial management, settlement, or trial. These devices include intradistrict consolidation under Federal Rule of Civil Procedure 42, class certification under Rule 23, multidistrict transfer under 28 U.S.C. § 1407..." [MCL §22.1 at 342.]

This Engle III cigarette litigation presents a textbook case for both trial and pretrial aggregation. As the MCL states:

---

8 Comparative negligence is not a defense to intentional torts, and the Engle I verdict included intentional concealment. If plaintiffs choose to assert only intentional concealment, comparative negligence would not be a defense. Likewise, only a limited subset of comparative negligence, "misuse," is a defense to strict liability. If only strict liability is asserted, then only misuse, a concept foreign to cigarette usage because there are no directions for use or number of cigarettes to smoke, etc., would be a viable defense.

11

> In general, product-based mass torts **in which the evidence of exposure and general causation is clear may be candidates for some form of aggregation**. When the circumstances of exposure vary widely, or where causation is uncertain or varying, aggregation for trial is inappropriate. In such cases, aggregation for pretrial discovery and motions may provide some efficiencies but will require careful management to protect some parties from unfair burden. [§22.311 at 357]

"Exposure" is clear in that it is defined as smoking, something within ordinary understanding. This can be contrasted to a situation where exposure is problematic or uncertain, for example, if the action alleges disease through electromagnetic waves. "General causation" of tobacco related disease has been established by Engle I, and further by voluminous scientific, medical, and government publications.[9]

---

9 See for example 27 years' of Surgeon General reports on tobacco disease: U.S. Department of Health and Human Services. *The Health Consequences of Smoking. A Report of the Surgeon General.* Washington: U.S. Department of Health and Human Services, Public Health Service, Office of the Assistant Secretary for Health, Office on Smoking and Health, 2004. U.S. Department of Health and Human Services. *The Health Consequences of Smoking for Women. A Report of the Surgeon General.* Washington: U.S. Department of Health and Human Services, Public Health Service, Office of the Assistant Secretary for Health, Office on Smoking and Health, 1980. U.S. Department of Health and Human Services. *The Health Consequences of Smoking: Cancer. A Report of the Surgeon General.* Rockville (MD): U.S. Department of Health and Human Services, Public Health Service, Office on Smoking and Health, 1982. DHHS Publication No. (PHS) 82-50179. U.S. Department of Health and Human Services. *The Health Consequences of Smoking: Cardiovascular Disease. A Report of the Surgeon General*. Rockville (MD): U.S. Department of Health and Human Services, Public Health Service, Office on Smoking and Health, 1983. DHHS Publication No. (PHS) 84- 50204. U.S. Department of Health and Human Services. *The Health Consequences of Smoking: Chronic Obstructive Lung Disease. A Report of the Surgeon General*. Rockville (MD): U.S. Department of Health and Human Services, Public Health Service, Office on Smoking and Health, 1984. DHHS Publication No. (PHS) 84-50205. U.S. Department of Health and Human Services. *The Health Consequences of Involuntary Smoking. A Report*

### *2.5 Other requirements for mass action are met*

These cigarette claims involve serious diseases of lung cancer and other cancers, emphysema and chronic bronchitis, peripheral vascular disease, and other fatal, life threatening, or life altering conditions. Evidently defendants agree the combined claims have value well beyond CAFA's threshold of $5 million.

## 3 THIS CASE IS NOT YET A MASS ACTION

Although the plaintiffs are perfect CAFA mass action plaintiffs, we suspect Tobacco is not being forthright with the Court when they remove on that basis. In an earlier Rule 26 submission to this Court on a similar case, defendants stated:

> Defendants deny that Plaintiffs meet the criteria set forth by the Florida Supreme Court in its Engle decision for application of the res judicata findings, or that those findings can or should be given preclusive effect.

---

*of the Surgeon General.* Rockville (MD): U.S. Department of Health and Human Services, Public Health Service, Centers for Disease Control, Center for Health Promotion and Education, Office on Smoking and Health, 1986. DHHS Publication No. (CDC) 87-8398. U.S. Department of Health and Human Services. *Reducing the Health Consequences of Smoking: 25 Years of Progress. A Report of the Surgeon General.* Rockville *Introduction and Approach to Causal Inference 33 The Health Consequences of Smoking* (MD): U.S. Department of Health and Human Services, Public Health Service, Centers for Disease Control, National Center for Chronic Disease Prevention and Health Promotion, Office on Smoking and Health, 1989. DHHS Publication No. (CDC) 89-8411. U.S. Department of Health and Human Services. *The Health Benefits of Smoking Cessation. A Report of the Surgeon General.* Atlanta: U.S. Department of Health and Human Services, Public Health Service, Centers for Disease Control, National Center for Chronic Disease Prevention and Health Promotion, Office on Smoking and Health, 1990. DHHS Publication No. (CDC) 90-8416.

>Accordingly, the Court and the parties will need to address a number of legal issues relating to the Florida Supreme Court's Engle decision. **Defendants assert that Plaintiffs are misjoined and Defendants intend to move to sever.** See Am. Joint Case Management Report at 11, *Bonner et. al. v. R.J. Reynolds et. al.*, Case No. 3:07-cv-00804, filed Jan. 24, 2008.

Which position does Tobacco want to take: that the plaintiffs constitute a mass action or that they are "misjoined"? The two positions are inconsistent.

In any case, there is presently no *order* joining the plaintiffs for trial. Legislative history behind CAFA makes it clear that such an order may be required. Merger for pretrial proceedings is not sufficient, as those cases have not "truly been merged" until there is an order for trial consolidation.

>**If a number of individually filed cases are consolidated solely for pretrial proceedings-and not for trial-those cases have not truly been merged in a way that makes them mass actions warranting removal to federal court.** On the other hand, if those same cases are consolidated exclusively for trial, or for pretrial and trial purposes, and the result is that 100 or more persons' claims will be tried jointly, those cases have been sufficiently merged to warrant removal of such a mass action to federal court. [S. REP. 109-14, S. Rep. No. 14, 109TH Cong., 1ST Sess. 2005, 2005 U.S.C.C.A.N. 3, 2005 WL 627977 (Leg.Hist.)]

As the case presently stands, the plaintiffs suggest it is premature to either remand or deny remand. The court should take the remand motion under advisement until there exists either an order setting more than 100 plaintiffs for trial, or until the defendants stipulate to such an order.

## 4 CONCLUSION

The Engle III claims present textbook claims for *mass action* status. The claims should be aggregated for trial under CAFA's mass action provision. If on the other hand the claims are or will be severed, then remand is proper because they are not or will not be a mass action.

## 5 LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel has conferred with J. W. Prichard, Jr., John DeVault, and Jim Murphy, attorneys for defendants. Mr. Prichard, Mr. DeVault and Mr. Murphy have indicated that defendants will oppose this motion.

Dated this 13th day of March, 2008.

/s/ Stephanie J. Hartley
**Norwood S. Wilner**
Florida Bar No.: 222194
**Stephanie J. Hartley**
Florida Bar No.: 0997846
**WILNER BLOCK, P.A.**
3127 Atlantic Boulevard, Suite 3
Jacksonville, Florida 32207
Telephone: (904) 446-9817
Facsimile: (904) 446-9825

>**Charlie Easa Farah, Jr.**
>Florida Bar No.:  870080
>**Farah & Farah, P.A.**
>10 West Adams Street
>Jacksonville, Florida 32202
>Telephone:  (904) 396-5555
>Facsimile:    (904) 358-2424
>
>*Attorneys for Plaintiffs*

## 6 CERTIFICATE OF SERVICE

I hereby certify that a true copy of Plaintiffs' Motion for Remand was furnished by CM/ECF on the 13<u>th</u> day of March, 2008, to the following counsel of record:

**John Yarber**
Florida Bar No.: 0688932
**Stephanie Parker**
Florida Bar No.: 0688355
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Telephone: (404) 521-3939
Facsimile: (404) 521-8330

**Joseph W. Prichard, Jr.**
**Robert B. Parrish**
Moseley, Prichard, Parrish, *et. al.*
501 West Bay Street
Jacksonville, FL 32202
Telephone: (904) 356-1306
Facsimile: (904) 354-0194

*Counsel for R.J. Reynolds Tobacco Co.*

**Kenneth J. Reilly**
SHOOK, HARDY & BACON, L.L.P.
Miami Center, Suite 2400
201 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 358-5171
Facsimile: (305) 358-7470

**James B. Murphy, Jr.**
**Joshua R. Brown**
**Terri L. Parker**
SHOOK, HARDY & BACON, L.L.P.
100 North Tampa Street, Suite 2900
Tampa, FL 33602

**Dana G. Bradford, III**
SMITH GAMBRELL RUSSELL LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL 32202

*Counsel for Philip Morris USA Inc.*

/s/ Stephanie J. Hartley
**Attorney**